**WO**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>BUSINESS RECOVERY SERVICES, LLC<br>    a limited liability company, and,<br><br>BRIAN HESSLER<br>    individually, and as owner, officer,<br>    or manager of Business Recovery<br>    Services, LLC,<br><br>    Defendants. | No.   CV11-390-PHX-JAT<br><br>**ORDER** |

After holding a hearing on April 5, 2011, the Court enters the following Findings of Fact and Conclusions of Law and grants Plaintiff's request for preliminary injunctive relief:

**FINDINGS OF FACT**

1.     Defendant Business Recovery Services ("BRS") is an Arizona limited liability company with its principal place of business in Maricopa County, within the District of Arizona.

2.     Defendant Brian Scott Hessler is the owner of Business Recovery Services. Defendant Hessler transacts business in the District of Arizona and throughout the United States.

3.     Defendant Hessler has the authority and responsibility to prevent or correct unlawful telemarketing practices of Defendant BRS, and has directed and participated in the acts and practices of Defendant BRS detailed herein.

4.     Defendants sell goods and services, including "recovery kits," that they state allow

customers to recover funds that consumers have lost in previous transactions.

5. Defendants market and sell their recovery kits to customers located across the United States.

6. Defendants initiate outbound telephone calls and receive inbound telephone calls. These calls are used to induce customers to purchase Defendants' recovery goods and services.

7. Some of the customers who purchase(d) Defendants' recovery kits lost money or other items of value in previous telemarketing transactions.

8. When a customer agrees to purchase one or more of Defendants' kits, Defendants immediately charge or bill the consumer for the recovery kit(s).

9. Defendants bill and customers pay for recovery kit(s) before the recovery kit(s) are sent to the customers. Defendants do not wait until seven days after the customers successfully recover the money or other item of value lost in a previous telemarketing transaction before requesting or receiving payment for the recovery kit(s).

10. Defendants' recovery kits contain a variety of materials, including a list of the business recovery kits Defendants sell, publications produced by the Federal Trade Commission on Business Opportunities, and instructions on how to use the recovery kit.

11. Additionally, Defendants' recovery kits contain form letters, with blanks for customers to write down their personal information, addressed to the Internal Revenue Service, a state attorney general's office, the Better Business Bureau, the customer's credit card company, and the United States Postal Inspection Service.

12. The United States Postal Inspection Service has logged the letters it received from Business Recovery Services customers. As of April 4, 2011, the Postal Service had received 4922 letters.

13. Defendants deny refund requests made by dissatisfied customers. They have a strict no refund policy.

14. Defendants' business practices, as detailed above, are ongoing, and have continued since the filing of this lawsuit.

## **CONCLUSIONS OF LAW**

15. This is an action brought by the United States under the Federal Trade Commission Act (the "FTCA"), 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), 56(a), and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act (the "Telemarketing Act"), 15 U.S.C. § 6105. Pursuant to 15 U.S.C. § 56(a)(1), the United States has the authority to seek the injunctive relief ordered herein.

16. The Complaint states claims upon which relief may be granted against Defendants under Sections 5(a), 5(m)(1)(A), 13(b), 16(a), and 19 of the FTCA, 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), 56(a), and 57b; Section 6 of the Telemarketing Act, 15 U.S.C. § 6105, and Sections 310.4(a)(3); and 310.3(a)(2)(iii) of the Telemarketing Sales Rule, 16 C.F.R. § 310.4(a)(3) and 16 C.F.R. § 310.3(a)(2)(iii).

17. This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355, and 15 U.S.C. §§ 45(m)(1)(A), 53(b), 56(a), and 57b.

18. Venue in the District of Arizona is proper pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1395(a), and 15 U.S.C. § 53(b).

19. The acts and practices of Defendants Hessler and BRS are in or affecting commerce, as defined in Section 4 of the FTCA, 15 U.S.C. § 44.

20. This Court has authority to grant a preliminary injunction and other appropriate relief pursuant to Section 13(b) of the FTCA, 15 U.S.C. § 53(b), and Rule 65 of the Federal Rules of Civil Procedure.

21. Congress directed the Federal Trade Commission (the "FTC") to prescribe rules prohibiting abusive and deceptive telemarketing acts and practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108, which resulted in the adoption of the Telemarketing Sales Rule, 16 C.F.R. Part 310.

22. Section 5(a) of the FTCA, 15 U.S.C. § 45(a), prohibits deceptive acts and practices in or affecting commerce. "An act or practice is deceptive if 'first, there is a representation, omission, or practice that, second, is likely to mislead consumers acting

1 reasonably under the circumstances, and third, the representation, omission, or practice is
2 material.'" *Federal Trade Comm'n v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009) (quoting
3 *Federal Trade Comm'n v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001)).

4   23.   Section 5(a) of the FTCA, 15 U.S.C. § 45(a), also prohibits unfair acts and practices in or affecting commerce. Under this Section, "an unfair practice or act is one that 'causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and is not outweighed by countervailing benefits to consumers or to competition.'" *Federal Trade Comm'n v. Neovi, Inc.*, 604 F.3d 1150, 1155 (9th Cir. 2010) (quoting 15 U.S.C. § 45(n)).

   24.   Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTCA, 15 U.S.C. § 57a(d)(3), any violation of the Telemarketing Sales Rule constitutes an unfair or deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTCA, 15 U.S.C. § 45(a).

   25.   The Telemarketing Sales Rule, in relevant part, prohibits those selling recovery goods or services from "requesting or receiving payment of any fee or consideration from a person for goods or services represented to recover or otherwise assist in the return of money or any other item of value paid for by, or promised to, that person in a previous telemarketing transaction, until seven (7) business days after such money or other items is delivered to that person." 16 C.F.R. § 310.4(a)(3).

   26. Violation of the Telemarketing Sales Rule does not require a promise by the recovery company that the customer will recover the money or other items of value lost in a previous telemarketing transaction, despite language found in the Rule's preamble. Although not a grammarian's ideal, the Rule is unambiguous and clearly does not contain a requirement that the recovery room telemarketer promise a return of lost funds. The plain meaning of a regulation controls. *Wards Cove Packing Co. v. Nat'l Marine Fisheries Serv.*, 3071219 (9th Cir. 2002); *see also Christopher v. SmithKline Beecham Corp.*, - - - F.3d - - -, 2011 WL 489708, *7 (9th Cir. February 14, 2011)(stating that if the language of a statute or regulation is unambiguous, the

4

1 Court applies the terms as written).  The Court will not consider the language of the preamble
2 unless the regulation itself is ambiguous.  *El Comité Para El Bienestar de Earlimart v.*
3 *Warmerdam*, 539 F.3d 1062, 1070 (9th Cir. 2008)("By analogy, the principles governing
4 interpretation of the preamble of a regulation are no different than those governing statutory
5 interpretation and thus, where the enacting or operative parts of a statute are unambiguous, the
6 meaning of the statute cannot be controlled by the language in the preamble.")(internal citations
7 omitted); *see also Dist. of Columbia v. Heller*, 554 U.S. 570, 578 n.3 (2008)("[I]n America, the
8 settled principle of law is that the preamble cannot control the enacting part of the statute in
9 cases where the enacting part is expressed in clear, unambiguous terms.")(internal citations
10 omitted).  Because the Telemarketing Sales Rule is unambiguous, the Court does not need to
11 consult the preamble and will apply the terms of the Rule as written.

12       27.    The power of an administrative agency to administer a federal statute requires the
13 formulation of policy and the enactment of rules to fill any gaps left by Congress.  *Chevron,*
14 *U.S.A., Inc. v. Natural Res. Def. Council*, 104 U.S. 837, 843 (1984).  Agencies have an express
15 delegation of authority to elucidate a specific provision of a statute by regulation.  *Id.* at 843-44.
16 Courts give such regulations controlling weight unless they are arbitrary, capricious, or
17 manifestly contrary to the statute.  *Id.* at 844; *see also* 5 U.S.C. §706(2)(When reviewing agency
18 action, the Court shall set aside any agency action, findings, or conclusions found to be arbitrary,
19 capricious, an abuse of discretion, or otherwise not in accordance with the law).  The
20 Telemarketing Sales Rule, as written, is not arbitrary, capricious, an abuse of discretion, or
21 otherwise manifestly contrary to law.

22       28.    The Telemarketing Sales Rule defines "telemarketer" as "any person who, in
23 connection with telemarketing, initiates or receives telephone calls to or from a customer or
24 donor."  16 C.F.R. § 310.2(bb).

25       29.    The Telemarketing Sales Rule defines "telemarketing" as "a plan, program, or
26 campaign which is conducted to induce the purchase of goods or services . . . by use of one or
27 more telephones and which involves more than one interstate telephone call."  16 C.F.R.
28

§ 310.2(cc).

30. Defendants are "telemarketers" engaged in "telemarketing" as those terms are defined in the Telemarketing Sales Rule.

31. Section 13(b) of the FTCA, 15 U.S.C. § 53(b), authorizes the issuance of preliminary injunctive relief "[u]pon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest." *Federal Trade Comm'n v. Affordable Media*, 179 F.3d 1228, 1233 (9th Cir. 1999) (quoting 15 U.S.C. § 53(b)). The FTCA therefore "places a lighter burden on the Commission than that imposed on private litigants by the traditional equity standard; the Commission need not show irreparable harm to obtain a preliminary injunction." *Id*. at 1233 (quoting Federal Trade Comm'n v. Warner Commc'ns, Inc., 742 F.2d 1156, 1159 (9th Cir. 1999)).

32. Substantial evidence demonstrates that Defendants market and sell their recovery kits to individuals who lost money or other items of value in previous telemarketing transactions.

33. Substantial evidence demonstrates that Defendants immediately charge or bill the consumer for the recovery kit(s), instead of waiting until seven (7) days after the consumer recovers the money he or she lost in the previous telemarketing transaction.

34. Defendants' practice of charging customers for recovery kit(s) without waiting seven (7) business days after the money the customer lost in the previous telemarketing transaction is recovered violates Section 310.4(a)(3) of the Telemarketing Sales Rule, 16 C.F.R. § 310.4(a)(3).

35. Plaintiff has demonstrated a strong likelihood of success on the merits of its claim in Count One that Defendants have violated Section 310.4(a)(3) of the Telemarketing Sales Rule.

36. Plaintiff has demonstrated a strong likelihood of success on the merits, and as a result, "a countershowing of private equities alone does not justify denial of a preliminary injunction." *Warner Commc'ns, Inc.*, 742 F.2d at 1159 (citing *Federal Trade Comm'n v. Weyerhaeuser Co.*, 665 F.2d 1072, 1083 (D.C. Cir. 1981)).

37. Purchasers of Defendants' recovery kit(s) who do not recover any of their

6

previously lost funds end up losing money twice as the ultimate result of the same scam. Although the Court's injunction may cause Defendants to lose some revenue, upholding the Telemarketing Sales Rule and protecting vulnerable members of the public outweigh any private loss of income by Defendants. Substantial evidence demonstrates that the equities favor granting injunctive relief. *Affordable Media*, 179 F.3d at 1236 ("[W]hen a district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight.")(internal citations omitted).

38. Weighing the equities and considering Plaintiff's likelihood of success, entry of a Preliminary Injunction is in the public interest.

Accordingly,

**IT IS HEREBY ORDERED** GRANTING Plaintiff's Motion for a Preliminary Injunction (Doc. 5).

**IT IS FURTHER ORDERED** that for purposes of this Order, the following terms shall have the given definitions:

A. "Defendants" means Business Recovery Services, LLC, and Brian Hessler, by whatever names each might be known, as well as their successors and assigns, whether acting directly or through any corporation, subsidiary, division or other device.

B. "Telemarketing" means a plan, program, or campaign that is conducted to induce the purchase of goods or services by use of one or more telephones and that involves more than one interstate telephone call.

C. "Customer" means any person who has either purchased recovery products or services from Defendants, or who has been solicited by Defendants to purchase their recovery products or services.

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, directors, employees, salespersons, independent contractors, subsidiaries, affiliates, successors, assigns and all other persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined, until

such time as the Court enters judgment on Plaintiff's claims for relief, from:

A. Requesting or receiving payment of any fee or consideration from a person for goods or services represented to recover or otherwise assist in the return of money or any other item of value paid by that person in a previous telemarketing transaction, until seven (7) business days after such money or other item is delivered to that person;

B. Destroying, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, any books, records, tapes, discs, accounting data, checks (fronts and backs), correspondence, forms, advertisements, brochures, manuals, electronically stored data, banking records, customer lists, files, invoices, telephone records, ledgers, payroll records, or other documents of any kind, including information stored in computer-maintained form, in their possession, custody or control, and other documents or records of any kind that relate to the business practices or finances of Defendants;

C. Failing to maintain complete records of any consumer complaints and disputes, whether coming from the consumer or any intermediary, such as a government agency or Better Business Bureau, and responses made to those complaints or disputes;

D. Selling, renting, leasing, transferring, or otherwise disclosing the name, address, telephone number, credit card number, bank account number, e-mail address, or other identifying information of any customer. Provided, however, that Defendants may disclose such identifying information to Plaintiff, as well as any law enforcement agency, or as required by any law, regulation, or court order.

///
///
///
///
///
///

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each officer, agent, director, employee, salesperson, independent contractor, subsidiary, affiliate, successor, assign and representative of Defendants, and within ten (10) calendar days following the issuance of this Order, shall file an affidavit in this action identifying the names and titles of the persons and entities that Defendants have served with a copy of this Order in compliance with this provision.

DATED this 14th day of April, 2011.

James A. Teilborg
United States District Judge