**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | ) No. CV11-390-PHX-JAT |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Business Recovery Services, LLC; Brian Hessler, | ) |
| Defendants. | ) |

Currently pending before the Court is Plaintiff United States of America's (the "Government") Motion for Order to Show Cause Why Defendants Should not be Held in Contempt (Doc. 53).

## BACKGROUND

Defendant Business Recovery Services ("BRS") is an Arizona limited liability company with its principal place of business in Maricopa County. Defendant Brian Scott Hessler is the owner of Business Recovery Services (collectively referred to herein as "Defendants").

Defendants sell goods and services, including "recovery kits," that they state allow customers to recover funds that consumers have lost in previous transactions. Some of the customers who purchase Defendants' recovery kits lost money or other items of value in previous telemarketing transactions.

1  Defendants market and sell their recovery kits to customers located across the United
2  States. Defendants initiate outbound telephone calls and receive inbound telephone calls.
3  These calls are used to induce customers to purchase Defendants' recovery goods and
4  services.

5  When a customer agrees to purchase one or more of Defendants' kits, Defendants
6  immediately charge or bill the costumer for the recovery kit(s). Defendants bill and
7  customers pay for recovery kit(s) before the recovery kit(s) are sent to the customers.

8  Defendants' recovery kits contain a variety of materials, including a list of the
9  business recovery kits Defendants sell, publications produced by the Federal Trade
10 Commission on Business Opportunities, and instructions on how to use the recovery kit.
11 Additionally, Defendants' recovery kits contain form letters, with blanks for customers to
12 write down their personal information, addressed to the Internal Revenue Service, a state
13 attorney general's office, the Better Business Bureau, the customer's credit card company,
14 and the United States Postal Inspection Service.

15 Among other claims, the Government alleges that Defendants' sale of recovery kits
16 for an up-front fee to customers who have lost money in previous telemarketing transactions
17 violates the Telemarketing Sales Rule, 16 C.F.R. Part 310. The Telemarketing Sales Rule,
18 in relevant part, prohibits those selling recovery goods or services from "requesting or
19 receiving payment of any fee or consideration from a person for goods or services
20 represented to recover or otherwise assist in the return of money or any other item of value
21 paid for by, or promised to, that person in a previous telemarketing transaction, until seven
22 (7) business days after such money or other item is delivered to that person." 16 C.F.R. §
23 310.4(a)(3).

24 The Government filed a Motion for a Preliminary Injunction (Doc. 5) to enjoin
25 Defendants from violating the Telemarketing Sales Rule. After holding a hearing on April
26 5, 2011, the Court granted the Government's Motion on April 15, 2011. The Court enjoined
27 Defendants from "requesting or receiving payment of any fee or consideration from a person
28 for goods or services represented to recover or otherwise assist in the return of money or any

- 2 -

1 other item of value paid by that person in a previous telemarketing transaction, until seven
2 (7) business days after such money or other item is delivered to that person." (Doc. 34, p.
3 8.)

4 In its Motion for Order to Show Cause Why Defendants Should not be Held in
5 Contempt (Doc. 53), the Government claims that Defendants are still charging or requesting
6 an up-front fee for their recovery kits from people who lost money in a prior telemarketing
7 transaction. If the Court finds Defendants have violated the injunction, the Government
8 wants the Court to impose compensatory civil sanctions by ordering Defendants to pay the
9 Government's attorneys' fees and to issue a refund to any customers who purchased a
10 recovery kit after April 15, 2011. Additionally, the Government asks the Court to assess a
11 coercive civil sanction of $1000 per day until the Defendants end their contempt.

## LEGAL STANDARD

13 The Court has wide discretion in determining whether a party has defied a court order.
14 *In re Crystal Palace Gambling Hall*, 817 F.2d 1361, 1364 (9th Cir. 1987). And the Court
15 can hold in civil contempt a party who has disobeyed a specific and definite court order by
16 failing to take all reasonable steps within the party's power to comply. *In re Dual-Deck*
17 *Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 695 (9th Cir. 1993); *see also* 18
18 U.S.C. §401 ("A court of the United States shall have power to punish by fine or
19 imprisonment, or both, at its discretion, such contempt of its authority . . . as . . . disobedience
20 or resistance to its lawful writ, process, order, rule, decree, or command.").

21 A party's contempt does not have to be willful, and no good faith exception exists.
22 *In re Dual-Deck*, 10 F.3d at 695. But the Court will not hold a party in contempt if the
23 party's behavior appears to be based on a good faith and reasonable interpretation of the
24 Court's order. *Id*. Substantial compliance with the Court's order is a defense to civil
25 contempt, and substantial compliance "is not vitiated by a few technical violations where
26 every reasonable effort has been made to comply." *Id*. (internal citations omitted). Nor will
27 the Court hold a party in contempt if the party is unable to comply with the court order. *In*
28 *re Crystal Palace*, 817 F.2d at 1365.

1 The party alleging civil contempt has the burden of demonstrating that a violation of the court's order occurred. *In re Dual-Deck*, 10 F.3d at 695. The party asserting contempt must show it by clear and convincing evidence. *Id*.

If the Court finds a party in contempt, then it may impose sanctions against the party to ensure compliance with the Court's order or to compensate the party injured by the noncompliance. *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992). "Civil contempt is characterized by the court's desire to compel obedience to a court order or to compensate the contemnor's adversary for the injuries which result from the noncompliance." *U.S. v. Bright*, 596 F.3d 683, 695-96 (9th Cir. 2010). Generally, the Court should impose the minimum sanction necessary to secure compliance. *Id*. at 696. But the Court retains discretion to establish appropriate sanctions. *Id*.

When the Court determines the size and duration of a coercive sanction, it should consider the character and magnitude of the harm threatened by continued contempt, and the probable effectiveness of any suggested sanction in bringing about the result desired. *Whittaker Corp.*, 953 F.2d at 517. The amount of a compensatory sanction is also within the discretion of the Court. *U.S. v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980). But ordinarily the amount of a compensatory fine is the actual damage caused by a party's contumacious act. *Id*.

## FINDINGS AND CONCLUSIONS

Based on the First Request for Admissions (Doc. 100-1) that the Court deemed admitted by Defendants' failure to timely respond (Doc. 103) and on the evidence presented at the contempt hearing, the Court finds that the Government presented clear and convincing evidence that Defendants sold recovery kits to Don Gillett, Thom Shelton, Vincent Laurino, and Robert Christopher Girten for an up-front fee after the April 15, 2011 injunction. The Court further finds that the Government presented clear and convincing evidence that Defendants sold recovery kits to Mr. Gillett, Mr. Shelton, Mr. Laurino, and Mr. Girten to assist them in recovering money they lost in a prior telemarketing transaction.

Despite selling recovery kits for an up-front fee to customers who paid money in a

- 4 -

1 prior telemarketing transaction, Defendants claim that they substantially complied with the
2 injunction by having their customers sign declarations saying the customers did not lose
3 money as a result of a telephone call. But the declarations do not contain the actual language
4 of the Telemarketing Sales Rule or this Court's injunction, nor do the declarations provide
5 the injunction's definition of a telemarketing transaction.

6 Moreover, Mr. Gillett, Mr. Shelton, and Mr. Laurino all testified that they did not read
7 the declarations before they signed them. Mr. Gillett testified that he found the electronic
8 signature process confusing and that he just hit tab to move from electronic signature line to
9 electronic signature line without reading the documents. And the evidence demonstrates that
10 the BRS sales associate sold Mr. Gillett a recovery kit even though he had told her that he
11 lost money in a prior telemarketing transaction. Mr. Laurino testified that he felt rushed and
12 pressured to finish the electronic signature process quickly. He testified that the BRS sales
13 associate kept telling him to just, "scroll down, scroll down." And the tape recording of the
14 sales call with Mr. Shelton demonstrates that even after Mr. Shelton objected that Bank Card
15 Empire used the telephone to sell him his failed at-home business opportunity, the BRS sales
16 associate incorrectly assured Mr. Shelton that his prior transaction was not a telemarketing
17 transaction.

18 The Court finds that Defendants' procedure of having customers electronically sign
19 a declaration stating they did not lose money as a result of a telephone call, especially given
20 the demonstrated sales tactics of some of Defendants' employees, does not adequately ensure
21 that the customers did not pay money or other items of value in a prior telemarketing
22 transaction. Defendants therefore did not substantially comply with the Court's Order by
23 having their customers sign that declaration.

24 Defendants also seem to argue that they have substantially complied with the Court's
25 Order because they sell their recovery kits only to business owners. First, while there is a
26 business-to-business exemption to the Telemarketing Sales Rule found in 16 C.F.R.
27 §310.6(b)(7), the Court's Order does not contain an exception for sales to businesses or
28 business owners. Second, even if the Court deems Defendants' interpretation of the Court's

Order to include a business-to-business exemption as a good faith and reasonable interpretation of the Court's Order, the evidence clearly demonstrates that Defendants sell their recovery kits to individuals who have failed in their efforts to start at-home businesses, not to businesses.

Mr. Gillett, Mr. Shelton, and Mr. Laurino all testified that the at-home-business opportunities they purchased in their prior telemarketing transactions never got off the ground. They all testified that they had given up on the at-home businesses they purchased by the time Defendants contacted them regarding the recovery kits. Defendants' own employees testified at the hearing that they had never sold a recovery kit or contingency services to a customer who had successfully started an at-home business. Defendants' attempts to characterize their customers, victims of prior telemarketing schemes, as "business owners" seems overly optimistic, at best, and disingenuous, at worst. Defendants' customers may have fervently hoped to become owners of active and ongoing businesses as a result of their prior telemarketing purchases, but there is no evidence that any of them brought those dreams to fruition.

Moreover, the Telemarketing Sales Rule clearly protects "a person" from being charged a fee earlier than seven business days after the return to "that person" of the money or other items . . .paid by "that person in a previous telemarketing transaction." Logically and grammatically "a person" and "that person" are one and the same individual or entity.

For the business exemption to apply, the business that is now being sold recovery goods or services, must also have been the business that paid money in the previous telemarketing transaction. This renders nonsensical, among several reasons, the argument that a business opportunity peddled in the earlier telemarketing transaction (an opportunity that apparently rarely, if ever, becomes a reality) is now a "business" for purposes of the business exemption from the Telemarketing Sales Rule. Simply put, the victim in the first instance must be the same victim in the latter instance.

No evidence presented to the Court indicates that the business-to-business exemption, under any reasonable interpretation of that exemption, applies to Defendants' sales of

recovery kits and contingency services to individuals who have unsuccessfully attempted to start at-home businesses. The business exemption simply does not apply to the sales at issue here. The Court therefore finds that Defendants did not substantially comply with the Court's Order by having their customers sign declarations stating that they are business owners.

In addition to sales of recovery kits for an up-front fee, the evidence introduced at the hearing shows that Home-Based Business Consulting LLC, BRS's sister company, did not wait seven days from its customers' receipt of a refund to charge for contingency services. If the contingency customers lost money in a prior telemarketing transaction, then the failure to wait seven business days to charge for the contingency services also violated the injunction. But the Government has not introduced clear and convincing evidence that the purchasers of the contingency services paid money or other items of value in a prior telemarketing transaction, other than in the case of Mr. Gillett.

After purchasing recovery kits, Mr. Gillett entered into a contingency services agreement with Home-Based Business Consulting LLC (Exh. 5), an affiliate of Defendants.[1] After signing the contingency agreement, Mr. Gillett received a refund from 3XP, one of the telemarketers to whom he previously lost money. Mr. Gillett testified that he received the $2500 refund from 3XP on June 23, 2011. His bank statement, which was introduced into evidence at the contempt hearing as Exhibit 8, reflects this amount was credited to his account on June 24, 2011. Mr. Gillett testified that he was charged for the contingency services six days after receiving the refund. His bank statement reflects a $825 payment to Business Recovery Systems on June 29, 2011. The evidence clearly demonstrates that Defendants, through their affiliate, violated the injunction by charging Mr. Gillett for contingency recovery services sooner than seven business days after he received a refund from 3XP.

The government has proved by clear and convincing evidence that Defendants

---

[1] The Court's Order enjoins Defendants' affiliates as well as Defendants.

violated the injunction by selling recovery kits for an up-front fee to people who paid money or other items of value in a prior telemarketing transaction and by failing to wait seven business days after Mr. Gillett received a refund to charge him for contingency services.[2] Because the Government has met its burden of proving Defendants have violated the Court's Order and because Defendants have failed to demonstrate that they have taken every reasonable effort to comply with the Court's Order, the Court holds Defendants in civil contempt.[3]

## SANCTIONS

The Court may impose sanctions against a party found to be in civil contempt to compensate the party injured by the noncompliance and to ensure future compliance with the Court's order. *Whittaker Corp.*, 953 F.2d at 517. Both the Government and consumers have been injured by Defendants' contempt.

The Government has offered clear and convincing proof, through testimony and deemed admissions, that Defendants' sales of recovery kits to Mr. Gillett, Mr. Shelton, Mr. Laurino, and Mr. Girten violated the Court's injunction. Mr. Gillett, Mr. Shelton, Mr. Laurino, and Mr. Girten were injured by Defendants' failure to comply with the Court's Order. The Court therefore orders Defendants to refund Mr. Gillett, Mr. Shelton, Mr. Laurino, and Mr. Girten the full purchase price for all recovery kits they purchased after April 15, 2011, offset by any refunds Defendants have already issued to any of them for recovery kits.[4] The Court further orders Defendants to refund Mr. Gillett the $850 it charged him for contingency recovery services because Defendants did not wait the seven business days required by the Court's Order.

---

[2] The party alleging civil contempt has the burden of demonstrating that a violation of the court's order occurred. *In re Dual-Deck*, 10 F.3d at 695.

[3] The Court can hold in civil contempt a party who has disobeyed a specific and definite court order. *In re Dual-Deck*, 10 F.3d at 695.

[4] Mr. Gillet testified that he received a $250 refund from Defendants for one of the recovery kits he purchased.

The Court will not order Defendants to refund the purchase of all recovery kits BRS has sold since April 15, 2011. The Government has not introduced clear and convincing evidence that any of the post-injunction recovery kit purchasers other than Mr. Gillett, Mr. Shelton, Mr. Laurino, and Mr. Girten paid money in a prior telemarketing transaction. The evidence therefore does not support the Government's request that the Court order Defendants to issue a refund to all customers who purchased a recovery kit after April 15, 2011. Nor has the Government offered clear and convincing evidence that any of the contingency services purchasers other than Mr. Gillett paid money in a prior telemarketing transaction. The Court therefore will not order a refund to all customers who were charged for their contingency services before the required seven business days.

In addition the refunds, the Court will order Defendants to pay the Government's reasonable attorneys' fees for briefing the Motion for Contempt and for the contempt hearing. The Government will file a properly supported motion for attorneys' fees that complies with Local Rule of Civil Procedure 54.2 within fourteen (14) days of the date of this Order. The Court finds that an award of attorneys' fees will both compensate the Government for the injury it suffered as a result of the Defendants' contempt and will help to ensure future compliance with the Court's Order.

The Court will order additional coercive sanctions to ensure Defendants' compliance with the Court's injunction. The Court will give Defendants thirty (30) days to conform their business practices to the dictates of the Court's injunction, as further elaborated by this Order. By thirty days from the date of this Order, Defendants must file a certificate stating that they are in compliance with the Court's injunction. The Court will assess a $1000 a day fine for every day Defendants fail to file the required certification. Further, for every violation of the injunction that the Government can prove by clear and convincing evidence occurs from the date of this Order, the Court will assess a $1000 fine per violation, will order a refund of the money paid by Defendants' customer, and will award attorneys' fees to the Government for having to prove the violation.

Accordingly,

1 **IT IS ORDERED** GRANTING Plaintiff United States of America's Motion for Order to Show Cause Why Defendants Should not be Held in Contempt (Doc. 53).

**IT IS FURTHER ORDERED** holding Defendants in civil contempt, with sanctions assessed as outlined above.

DATED this 17th day of October, 2011.

James A. Teilborg
United States District Judge