**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CV11-390-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| Business Recovery Services, LLC; Brian Hessler, | |
| Defendants. | |

The Clerk inadvertently docketed an incorrect draft[1] of the Court's Order on Defendants' pending Amended Motion for New Trial and for Opinion Regarding Proposed Conduct (Doc. 38), Motion to Prohibit Website Postings of Pleadings and Orders (Doc. 75), Motion to Dissolve or, Alternately, Modify Preliminary Injunction (Doc. 83), and Motion to Appoint a Master (Doc. 86). The Clerk has sealed the incorrect version of the Order that was originally docketed at Docket Entry 116. The parties therefore can no longer view that docket entry and cannot rely on that incorrect draft for any reason. The Court hereby strikes the incorrect draft order that was docketed at Docket 116 and replaces it with the following Order:

Currently pending before the Court are Defendants' Amended Motion for New Trial and for Opinion Regarding Proposed Conduct (Doc. 38), Motion to Prohibit Website

---

[1] Based on receiving an incorrect draft from chambers.

Postings of Pleadings and Orders (Doc. 75), Motion to Dissolve or, Alternately, Modify Preliminary Injunction (Doc. 83), and Motion to Appoint a Master (Doc. 86). The Court now rules on the Motions.

## BACKGROUND

Defendant Business Recovery Services ("BRS") is an Arizona limited liability company with its principal place of business in Maricopa County. Defendant Brian Scott Hessler is the owner of Business Recovery Services.

Defendants sell goods and services, including "recovery kits," that they state allow customers to recover funds that consumers have lost in previous transactions. Some of the customers who purchase Defendants' recovery kits lost money or other items of value in previous telemarketing transactions.

Defendants market and sell their recovery kits to customers located across the United States. Defendants initiate outbound telephone calls and receive inbound telephone calls. These calls are used to induce customers to purchase Defendants' recovery goods and services.

When a customer agrees to purchase one or more of Defendants' kits, Defendants immediately charge or bill the consumer for the recovery kit(s). Defendants bill and customers pay for recovery kit(s) before the recovery kit(s) are sent to the customers.

Defendants' recovery kits contain a variety of materials, including a list of the business recovery kits Defendants sell, publications produced by the Federal Trade Commission on Business Opportunities, and instructions on how to use the recovery kit. Additionally, Defendants' recovery kits contain form letters, with blanks for customers to write down their personal information, addressed to the Internal Revenue Service, a state attorney general's office, the Better Business Bureau, the customer's credit card company, and the United States Postal Inspection Service.

Among other claims, Plaintiff United States of America (the "Government") alleges that Defendants' sale of recovery kits to customers who have lost money in previous telemarketing transactions violates the Telemarketing Sales Rule, 16 C.F.R. Part 310. The

1 Telemarketing Sales Rule, in relevant part, prohibits those selling recovery goods or services 2 from "requesting or receiving payment of any fee or consideration from a person for goods 3 or services represented to recover or otherwise assist in the return of money or any other item 4 of value paid for by, or promised to, that person in a previous telemarketing transaction, until 5 seven (7) business days after such money or other items is delivered to that person." 16 6 C.F.R. § 310.4(a)(3).

7 The Government filed a Motion for a Preliminary Injunction (Doc. 5) to enjoin 8 Defendants from violating the Telemarketing Sales Rule. After holding a hearing on April 9 5, 2011, the Court granted the Government's Motion. The Court enjoined Defendants from 10 "requesting or receiving payment of any fee or consideration from a person for goods or 11 services represented to recover or otherwise assist in the return of money or any other item 12 of value paid by that person in a previous telemarketing transaction, until seven (7) business 13 days after such money or other item is delivered to that person." (Doc. 34, p. 8.)

**AMENDED MOTION FOR NEW TRIAL**

15 Defendants' Amended Motion for New Trial has two parts. In the first part, 16 Defendants ask the Court to reconsider its findings of fact and law supporting the injunction. 17 In the second part, Defendants seek an opinion regarding whether their proposed conduct 18 violates the injunction.

19 <u>Amended Motion for New Trial</u>

20 The Government argues that Defendants improperly filed a Motion for New Trial 21 because no trial has occurred. The Government asserts that Defendants should have filed a 22 Rule 60(b) motion, instead of a Rule 59(a) motion. Defendants counter that the Court's 23 Order granting the preliminary injunction is a judgment subject to a Rule 59 motion because 24 the Order is immediately appealable. Whether the Court analyzes Defendants' arguments 25 for reconsideration under Rule 59 or Rule 60 does not affect the Court's ruling.

26 Generally, motions for reconsideration are appropriate only if: 1) the movant presents 27 newly discovered evidence; 2) the Court committed clear error or the initial decision was 28 manifestly unjust; or 3) an intervening change in controlling law has occurred. *School Dist.*

1  *No. 1J, Multnomah County, Or. v. AcandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).  A party
2  should not file a motion to reconsider to ask a court "to rethink what the court had already
3  thought through, rightly or wrongly." *Above the Belt, Inc. v. Mel Bohannon Roofing, Inc.*,
4  99 F.R.D. 99, 101 (E.D.Va. 1983).  "No motion for reconsideration shall repeat in any
5  manner any oral or written argument made in support of or in opposition to the original
6  motion." *Motorola, Inc. v. J.B. Rodgers Mechanical Contractors, Inc.*, 215 F.R.D. 581, 586
7  (D.Ariz. 2003).  The Court ordinarily will deny "a motion for reconsideration of an Order
8  absent a showing of manifest error or a showing of new facts or legal authority that could not
9  have been brought to its attention earlier with reasonable diligence."  L.R.Civ.P. 7.2(g)(1).

10  Defendants first argue that the Court erred in interpreting the Telemarketing Sales
11  Rule without considering the preamble to the Rule.  Defendants, as they did in opposition to
12  the Motion for Preliminary Injunction, assert that the Telemarketing Sales Rule applies only
13  if the telemarketer promises a recovery of previously lost sums, as outlined in the preamble.
14  Defendants arguments for reconsideration of this issue are merely repetitions of their
15  arguments against granting the injunction.  Motions for reconsideration are not proper if they
16  merely ask the Court "to rethink what the court had already thought through, rightly or
17  wrongly." *Above the Belt*, 99 F.R.D. at 101.

18  Defendants do not point to a change in the law since the Court issued its Order.  Nor
19  did the Court commit clear error in finding the Telemarketing Sales Rule is unambiguous and
20  therefore by its terms applies to sales where the telemarketer does not promise a return of lost
21  funds.[2]  The Court therefore will not reconsider its earlier ruling regarding the proper
22  interpretation of the Telemarketing Sales Rule.

23  Defendants also urge the Court to reconsider its decision that the evidence at the

---

[2]If the language of a regulation is unambiguous, the Court applies the terms as written. *Christopher v. SmithKline Beecham Corp.*, 635 F.3d 383, 392, 2011 (9th Cir. 2011); *see also El Comité Para El Bienestar de Earlimart v. Warmerdam*, 539 F.3d 1062, 1070 (9th Cir. 2008)(stating that a court need not consult the preamble if a regulation is unambiguous).

preliminary injunction hearing supported a finding that at least some of the purchasers of Defendants' recovery kits lost money in prior telemarketing transactions. Because Defendants introduce no new evidence and because the evidence adduced at the hearing demonstrated that at least some of Defendants' customers lost money in prior telemarketing scams, the Court will not reconsider its finding.

Finally, Defendants ask the Court to reconsider its finding that the equities favored granting injunctive relief because protecting vulnerable members of the public outweighed any private loss of income by Defendants. Defendants make no new arguments regarding the balancing of the equities, but just rehash their prior arguments. The Court therefore will not reconsider its earlier decision.

Opinion on Proposed Conduct

The second part of Defendants' Amended Motion for New Trial seeks advice from the Court regarding their proposed conduct. Defendants ask the Court to offer an opinion regarding whether their proposed business changes – including a new declaration inquiring about a customer's past experience with telemarketers, a modified refund policy, and a modified script for sales associates – would satisfy the injunction.

The Court assumes this portion of the Motion was superseded and mooted by the Government's Motion for a contempt hearing that covers Defendants' proposed business changes and Defendants' own Motion to Dissolve or, Alternatively, Modify Preliminary Injunction. To the extent Defendants believe the request for an advisory opinion was not mooted by those filings, the Court denies the request.

Defendants correctly note that at least one circuit has held that a party subject to an injunction has the right to ask the court that is administering the injunction whether the injunction applies to conduct in which the party proposes to engage. *In re Hendrix*, 986 F.2d 195, 200 (7th Cir. 1993)("If this looks like a request for an 'advisory opinion,' it is one that even a federal court can grant, in order to prevent unwitting contempts . . ."). But while the

Court can entertain a motion to clarify an injunction,[3] Defendants have not indicated which aspect of the injunction is unclear or suggested alternative language. *See In re Crystal Palace Gambling Hall*, 817 F.2d 1361, 1366 (9th Cir. 1987)("At the time the appellants decided not to execute the necessary documents, the district court's order needed no clarification . . . The November 8th order explicitly stated . . . If there had been any ambiguity or uncertainty earlier, that ambiguity ceased to exist when the November 8th court order was issued."). Nor have Defendants explained how they could "unwittingly" run afoul of the injunction.

Because of the scheduled contempt hearing and because the Court declines Defendants' invitation to give advice point by point on whether a particular business modification violates the injunction, the Court will deny the request for an advisory opinion.

## MOTION TO PROHIBIT WEBSITE POSTINGS

Defendants move the court for an order to prohibit postings by the FTC on its website of the pleadings in this case. The FTC has posted the following on its website: the Complaint; the Motion for Preliminary Injunction and supporting Memorandum; a news release describing its suit against Defendants; and the Reply in Support of Motion for Preliminary Injunction. As Defendants concede, all of the pleadings in this case are matters of public record. Anyone could come to the Court to review the pleadings.

Defendants have offered no legal support for their position. They have not cited to any cases in which a court prohibited a government party from posting copies of publicly available pleadings on a government website. Nor does the Court find justification for prohibiting the website postings. The Court therefore will deny the Motion to Prohibit Website Postings of Pleadings and Orders (Doc. 75).

---

[3]*Connecticut General Life Insurance Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003)("[T]he proper approach would be for [] to seek a modification or clarification of the injunction from the district court.")

**MOTION TO APPOINTMENT A MASTER**

Defendants request that the Court appoint a master, pursuant to Federal Rule of Civil Procedure 53, to monitor discovery, resolve discovery disputes, conduct settlement conferences, and to offer recommendations regarding compliance with the preliminary injunction. Defendants cite the likelihood of numerous discovery disputes and this Court's very full docket as reasons for the appointment of a master.

While the Court appreciates Defendants' recognition of the Court's heavy case load, the Court does not find it necessary to appoint a master at this time. The Court hopes the parties will diligently work together to resolve any discovery disputes before bringing disputes to the Court's attention. But even if the Court has to resolve discovery disputes, the Court's procedure requiring parties to submit to discovery dispute conferences, rather than to allow discovery motions, allows the Court to resolve discovery disputes relatively quickly.

To date, the Government has filed one motion for contempt. The Court was able to hold a timely contempt hearing without assistance. Moreover, the Court does not need to appoint a master to oversee settlement conferences. If both Defendants and Plaintiff agree, the Court can refer this matter to a Magistrate Judge to hold a settlement conference.

The Court finds it does not need the assistance of a master at this time. If this case becomes more complicated and troublesome than the Court anticipates, the Court can always revisit the issue. But the Court notes that having a special master sometimes actually slows down the proceedings because rather than decide an issue in the first instance, the Court decides an issue only after receiving a report and recommendation. So, both the master and the Court must decide the same issue.

For the foregoing reasons, the Court will deny the Motion to Appoint a Master (Doc. 86).

**MOTION TO DISSOLVE OR, ALTERNATIVELY, MODIFY PRELIMINARY INJUNCTION**

Defendants move the Court for an order either dissolving or modifying the preliminary injunction. They base their motion on exemptions to the Telemarketing Sales

- 7 -

1  Rule and the efficacy of the new customer Declaration to ensure compliance with the
2  exemptions.
3      A court that issues an injunction retains the power to modify or suspend it. *Clark v.
4  Coye*, 60 F.3d 600, 606 (9th Cir. 1995). The party seeking dissolution or modification of an
5  injunction bears the burden of establishing that a significant change in facts or law justifies
6  dissolution or modification. *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000)(citing
7  *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992)). If the party meets its
8  initial burden of demonstrating a significant change in facts or law, then the Court considers
9  whether the proposed modification is suitably tailored to the changed circumstances. *Rufo*,
10 502 U.S. at 383.
11     Defendants argue that the new declaration that they make their customers
12 electronically sign constitutes a significant change in the facts that justifies either dissolving
13 the injunction or modifying the injunction. The Court disagrees. While the Court
14 appreciates Defendants' attempts to comply with the injunction by having their customers
15 attest that they did not lose money in a prior telemarketing transaction, the Court does not
16 find that the new declaration constitutes a significant change in the facts that warrants
17 dissolving the injunction.
18     Defendants further argue that the business-to-business exception to the Telemarketing
19 Sales Rule justifies modifying the injunction. That subsection exempts from the
20 Telemarketing Sales rule:
21 Telephone calls between a telemarketer and any business, except calls to induce the retail sale of nondurable office or cleaning supplies; provided, however, that §310.4(b)(1)(iii)(B)
22 and §310.5 of this Rule shall not apply to sellers or telemarketers of nondurable office or cleaning supplies.
23
24 16 C.F.R. §310.6(b)(7).
25     But the business-to-business exception existed when the Court held the hearing on
   the Motion for Preliminary Injunction, and Defendants did not bring the exception to the
26
   Court's attention. Defendants therefore have not demonstrated a "change" in the law. Nor
27
28 does having customers sign a declaration acknowledging the transaction with Defendants "is

- 8 -

a business-to-business call that deals with the businesses that I own or owned . . . During this call, I am operating as the head of my business entity" (Doc. 90-3), constitute a significant change of facts.

The Court also rejects Defendants' arguments that the business exemption applies to their sales of recover kits. The evidence introduced at the contempt hearing demonstrates that most, if not all, of the people to whom Defendants sell their kits attempted to start an at-home business, but never successfully launched a business. Defendants' own declaration highlights this fact by including the "business that I own *or owned*" language. (Doc. 90-3.)

While the exception does not define the term "business,"[4] the exception at the very least requires an extant business. Moreover, the Telemarketing Sales Rule clearly protects "a person" from being charged a fee earlier than seven business days after the return to "that person" of the money or other items . . .paid by "that person in a previous telemarketing transaction." Logically and grammatically "a person" and "that person" are one and the same individual or entity.

For the business exemption to apply, the business that is now being sold recovery goods or services, must also have been the business that paid money in the previous telemarketing transaction. This renders nonsensical, among several reasons, the argument that a business opportunity peddled in the earlier telemarketing transaction (an opportunity that apparently rarely becomes a reality) is now a "business" for purposes of the business exemption from the Telemarketing Sales Rule. Simply put, the victim in the first instance must be the same victim in the latter instance.

Therefore, even if a significant change in law or facts had occurred, Defendants could not meet their burden of demonstrating that the proposed modification "is suitably tailored to the changed circumstances." *Rufo*, 502 U.S. at 383. Defendants have proposed the following: "the preliminary injunction should be modified to enjoin only the applicable

---

[4] Defendants correctly note that nothing in the business-to-business exception excludes at-home businesses from the term "business." But the Court finds it likely that the exception was intended for more formal types of businesses that afford certain protections.

request or receipt of upfront payment from a person, other than a business owner, for applicable goods or services provided by BRS." (Doc. 83, p.6.) The proposed modification does not make explicit that the customer contacted by Defendants must be an ongoing, active business concern that was the victim of the prior telemarketing transaction.

Because Defendants have not met their initial burden of demonstrating a significant change in facts or law and because the business-to-business exemption does not apply to Defendants' sales of recover kits or contingency services, the Court will deny the Motion to Dissolve or, Alternatively, Modify Preliminary Injunction (Doc. 83).

Accordingly,

**IT IS ORDERED** DENYING Defendants' Amended Motion for New Trial and for Opinion Regarding Proposed Conduct (Doc. 38).

**IT IS FURTHER ORDERED** DENYING Defendants' Motion to Prohibit Website Postings of Pleadings and Orders (Doc. 75).

**IT IS FURTHER ORDERED** DENYING Defendants' Motion to Dissolve or, Alternately, Modify Preliminary Injunction (Doc. 83).

**IT IS FURTHER ORDERED** DENYING Defendants' Motion to Appoint a Master (Doc. 86).

DATED this 17th day of October, 2011.

*[signature]*
James A. Teilborg
United States District Judge