**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | No. CV11-390-PHX-JAT |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| ) | |
| Business Recovery Services, LLC; Brian ) | |
| Hessler, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Currently pending before the Court is Plaintiff United States of America's (the "Government") Motion for Attorneys' Fees. (Doc. 124).

**I. BACKGROUND**

Defendant Business Recovery Services ("BRS") is an Arizona limited liability company with its principal place of business in Maricopa County. Defendant Brian Scott Hessler is the owner of BRS (collectively referred to herein as "Defendants").

Defendants sell goods and services, including "recovery kits," that they state allow customers to recover funds that consumers have lost in previous transactions. Some of the customers who purchase Defendants' recovery kits lost money or other items of value in previous telemarketing transactions.

Defendants market and sell their recovery kits to customers located across the United States. Defendants initiate outbound telephone calls and receive inbound telephone calls.

1 These calls are used to induce customers to purchase Defendants' recovery goods and
2 services.
3       When a customer agrees to purchase one or more of Defendants' kits, Defendants
4 immediately charge or bill the costumer for the recovery kit(s).  Defendants bill and
5 customers pay for recovery kit(s) before the recovery kit(s) are sent to the customers.
6       Defendants' recovery kits contain a variety of materials, including a list of the
7 business recovery kits Defendants sell, publications produced by the Federal Trade
8 Commission on Business Opportunities, and instructions on how to use the recovery kit.
9 Additionally, Defendants' recovery kits contain form letters, with blanks for customers to
10 write down their personal information, addressed to the Internal Revenue Service, a state
11 attorney general's office, the Better Business Bureau, the customer's credit card company,
12 and the United States Postal Inspection Service.
13       Among other claims, the Government alleges that Defendants' sale of recovery kits
14 for an up-front fee to customers who have lost money in previous telemarketing transactions
15 violates the Telemarketing Sales Rule, 16 C.F.R. Part 310.  The Telemarketing Sales Rule,
16 in relevant part, prohibits those selling recovery goods or services from "requesting or
17 receiving payment of any fee or consideration from a person for goods or services
18 represented to recover or otherwise assist in the return of money or any other item of value
19 paid for by, or promised to, that person in a previous telemarketing transaction, until seven
20 (7) business days after such money or other item is delivered to that person."  16 C.F.R. §
21 310.4(a)(3).
22       The Government filed a Motion for a Preliminary Injunction (Doc. 5) to enjoin
23 Defendants from violating the Telemarketing Sales Rule.  After holding a hearing on April
24 5, 2011, the Court granted the Government's Motion on April 15, 2011.  The Court enjoined
25 Defendants from:

26     requesting or receiving payment of any fee or consideration from a person for
    goods or services represented to recover or otherwise assist in the return of
27     money or any other item of value paid by that person in a previous
    telemarketing transaction, until seven (7) business days after such money or
28     other item is delivered to that person.

- 2 -

(Doc. 34 at 8.)

On May 24, 2011, the Government filed a Motion for Order to Show Cause Why Defendants Should not be Held in Contempt. (Doc. 53). The Government claimed that Defendants were still charging or requesting an up-front fee for their recovery kits from people who lost money in a prior telemarketing transaction. The Government also asked the Court to impose compensatory civil sanctions should Defendants be found in contempt. The Court held a two-day hearing starting on October 10, 2011. Following the hearing, the Court issued an order that, among other things, held Defendants in civil contempt. (Doc. 117). The Court also ordered "Defendants to pay the Government's reasonable attorneys' fees for briefing the Motion for Contempt and for the contempt hearing," provided that the Government "file a properly supported motion for attorneys' fees that complies with Local Rule of Civil Procedure 54.2 within fourteen (14) days of the date of [the] order." *Id.* at 9.

The Government filed its Motion for Attorneys' Fees within fourteen days on October 31, 2011. (Doc. 124). The Government requests a total amount of "$33,064.87 in attorneys' fees and non-taxable expenses as a compensatory civil contempt sanction." (Doc. 124 at 8). Specifically, the Government is requesting: (1) $2,249.63 for 23 hours of work by paralegal specialist Craig Radoci; (2) $255.58 for 2.5 hours of work by IT specialist Matthew Robinson; (3) $489.70 for 5 hours of work by paralegal specialist Gina Hosey; (4) $561.12 for 8 hours of work by paralegal assistant Basil Hamilton; (5) $2,562.13 transcript expenses for 3 depositions; (6) $1,311.91 in various expenses for a deposition and the contempt hearing; and (7) $25,634.80 for 190 hours of work by the Government's counsel. (Doc. 124 at 5–7). The issue has been fully briefed, and for the reasons stated below, the Court will grant the motion.[1]

**II. LEGAL STANDARD**

If the Court finds a party in contempt, then it may impose sanctions against the party

---

[1] Defendants' request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

1 to ensure compliance with the Court's order or to compensate the party injured by the
2 noncompliance. *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992).
3 "Civil contempt is characterized by the court's desire to compel obedience to a court order
4 or to compensate the contemnor's adversary for the injuries which result from the
5 noncompliance." *U.S. v. Bright*, 596 F.3d 683, 695–96 (9th Cir. 2010). Generally, the Court
6 should impose the minimum sanction necessary to secure compliance. *Id*. at 696. But the
7 Court retains discretion to establish appropriate sanctions. *Id*. The amount of a
8 compensatory sanction is also within the Court's discretion. *U.S. v. Asay*, 614 F.2d 655, 660
9 (9th Cir. 1980). Ordinarily the amount of a compensatory fine is the actual damage caused
10 by a party's contumacious act. *Id*.

**III. DISCUSSION**

Defendants object to the Government's Motion for Attorneys' Fees, presenting three arguments: (1) the amount is excessive and unreasonable because the requested fees go beyond the fees identified in this Court's Order (Doc. 117); (2) there was no good faith attempt to resolve the "disputed issues relating to attorneys' fees" under Local Rule of Civil Procedure 54.2(d)(1); and (3) the Government's motion fails to meet the requirements of Local Rule of Civil Procedure 54.2. The Court will discuss each argument in turn below.

**A. The reasonableness of the Government's request for attorneys' fees**

Defendants argue that the amount of fees the Government requests is excessive and cites this Court's Order in support of that proposition. The Court ordered "Defendants to pay the Government's reasonable attorneys' fees for briefing the Motion for Contempt and for the contempt hearing." (Doc. 117 at 9). The Order further stated that "an award of attorneys' fees will both compensate the Government for the injury it suffered *as a result of the Defendants' contempt* and will help ensure future compliance with the Court's Order." (Doc. 117 at 9) (emphasis added).

Defendants argue that the phrase "attorneys' fees for briefing the Motion for Contempt and for the contemp hearing" limits the appropriate attorneys' fees to be only those fees for actually writing the Motion for Contempt and for attending the hearing. (Doc. 130

at 2). Thus, Defendants argue that the Order excludes fees for paralegal work and the general work involved with preparing for a contempt hearing. The Government argues that such a reading is too narrow in light of the language in the rest of the Order and the general understanding of what is included in an award for attorneys' fees.

The Court agrees with the Government that Defendants' interpretation of the Court's Order is indeed too narrow. The Government provides ample legal authority to support the proposition that the traditional understanding of attorneys' fees includes the fees a lawyer would normally charge a client, whether performed by lawyers, paralegals, or law clerks. (Doc. 133 at 2–3) (citing *Priestley v. Astrue*, 651 F.3d 410, 416 (4th Cir. 2011); *Reed v. Purcell*, No. CV 10-2324-PHX-JAT, 2011 WL 5128142, at *3 (D. Ariz Oct. 31, 2011); *AOM Group, LLC v. Provident Funding Assocs. L.P.*, No. CV 10-605-PHX-MHM, 2011 WL 1253642, at *1 (D. Ariz. April 1, 2011)). Additionally, the Government also provides legal authority for the notion that attorneys' fees normally includes travel expenses "'because travel and meal expenses are the sort of things that a lawyer includes with a bill for professional services.'" (Doc. 133 at 2) (citing *Calderon v. Witvoet*, 112 F.3d 275, 276 (7th Cir. 1997) (quoting *Missouri v. Jenkins*, 491 U.S. 274, 285–89 (1989); *Herold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir. 1988)). Defendants' response to the Government's motion is devoid of any citations to any authorities in support of its position other than the text of Local Rule of Civil Procedure 54.2.[2]  (Doc. 130).

Further, the Court's Order is clear that the award of attorneys' fees was intended to compensate the Government for the costs it incurred as a result of Defendants' contempt. That statement provides the outer limits of the Court's award of attorneys' fees; the Government is entitled *only* to those fees that directly resulted from Defendants' contempt.

---

[2] Local Rule of Civil Procedure 54.2, which is the only authority Defendants cite, also supports the Government's position that awards of attorneys' fees usually include work other than that done by an actual attorney. *See* LRCiv 54.2(e)(1)(D) (requiring that requests for attorneys' fees include "[t]he identity of the attorney, paralegal, or other person performing such service").

- 5 -

This includes fees for preparing for the Contempt Hearing, such as but not limited to interviewing witnesses, taking depositions, and drafting motions in the course of the Hearing. The fees outlined in the Government's motion are all a direct result of Defendants' contempt and are generally included in an award for attorneys' fees. Put another way, the Government incurred those fees as a direct result of Defendants' contempt and would not have incurred them otherwise. Defendants present no other argument regarding the reasonableness of the Government's requested amount; thus, the attorneys' fees as listed in the Government's motion are reasonable and covered by the Court's Order. *See Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992) (citations omitted) ("The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits.").

### B. Good faith attempt to resolve disputed issues

Local Rule of Civil Procedure 54.2(d)(1) provides in relevant part:

> No motion for award of attorneys' fees will be considered unless a separate statement of the moving counsel is attached to the supporting memorandum certifying that, after personal consultation and good faith efforts to do so, the parties have been unable to satisfactorily resolve all disputed issues relating to attorneys' fees or that the moving counsel has made a good faith effort, but has been unable, to arrange such conference. The statement of consultation shall set forth the date of the consultation, the names of the participating attorneys and the specific results or shall describe the efforts made to arrange such conference and explain the reasons why such conference did not occur.

There is no dispute that the Government attached the required supporting memorandum to their motion as the rule provides. Defendants also do not dispute that the supporting memorandum technically meets the specifications of Rule 54.2(d)(1); the supporting memorandum does state the date of a consultation, the names of the participating attorneys and the results. Defendants' argument is that the description contained in the supporting memorandum is inaccurate and that no good faith attempt to resolve the disputed issues actually took place.

The supporting memorandum states that the Government contacted Defendants on October 27, 2011 in order to schedule a conference pursuant to Local Rule 54.2(d)(1). (Doc.

124-1). Defendants were unavailable to respond to the original email, and the Government sent another follow up email again requesting to schedule a conference. (Doc. 130 at 8). Defendants replied and asked for the amount of the Government's request, which was provided on October 31, 2011—the day the Government's motion was due and the day the parties agreed to hold a conference. (Doc. 133 at 7). Defendants then requested a further breakdown of the requested attorneys' fees, which was provided shortly before the parties' scheduled conference. (Doc. 130 at 8).

Defendants argue that the brief window of time in which the Government provided a full breakdown of the request for attorneys' fees made it impossible to have a good faith discussion to resolve disputed issues. The Government responds that it offered to discuss the Motion further if necessary after the conference took place, but that Defendants turned down the offer and made no further contact. The Government also argues that, given Defendants' position that the request for attorneys' fees is outside the scope of the Court's Order, there would have been no resolution if the parties had met further.

All that Local Rule 54.2(d)(1) requires is that the moving party makes a good faith *effort* to consult with the non-moving party in order to resolve disputed issues. The Government's attempts to initiate contact several days before the motion was due in order to schedule a conference constitutes such a good faith effort. True, Defendants' inability to reply to the Government's first contact for two days, combined with the Government's deadline for filing the Motion, created a less-productive environment for resolving disputed issues. But, it does not follow that the Government failed in making a good faith effort to meet with Defendants in order to resolve disputed issues. The Government offered to meet again later in the same day in which the conference took place, to which Defendants declined. From these facts, the Court finds that the Government made a good faith effort to resolve disputed issues as required by Local Rule 54.2(d)(1).

**C. The Government's Motion and the requirements of Local Rule 54.2**

Defendants argue that a large portion of the Government's request for attorneys' fees does not satisfy the requirements set forth in Local Rule of Civil Procedure 54.2. Local Rule

- 7 -

54.2(e)(1) requires that requests for attorneys' fees include an itemized account of expended time and contain: "(A) The date on which the service was performed; (B) The time devoted to each individual unrelated task performed on such day; (C) A description of the service provided; and (D) The identity of the attorney, paralegal, or other person performing such service." Rule 54.2(e)(2) requires that itemized accounts of expended time "adequately describe the services rendered so that the reasonableness of the charge can be evaluated." When requesting attorneys' fees, the moving party "is not required to record in great detail how each minute of his time was expended." *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983). Rather, the moving party "'can meet his burden—although just barely—by simply listing his hours and identify[ing] the general subject matter of his time expenditures.'" *Rudebusch v. Arizona*, Nos. 95-CV-1313-PCT-RCB, 96-CV-1077-PCT-RCB, 2007 WL 2774482, at *8 (D. Ariz. Sept. 21, 2007) (quoting *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000)).

The Government's itemized account of time expended includes thirteen different statements related to the different tasks performed in preparation of and participation in the contempt hearing. Defendants do not object to the first, third, or thirteenth statement. Defendants claim that the other ten statements are not sufficient under Local Rule 54.2(e), but they do so in only one sentence and with no explanation as to how the statements are insufficient. (Doc. 130 at 7). Each of the contested ten statements, at a minimum, lists the hours expended and identifies "the general subject matter of [the] expenditures." *Rudebusch*, 2007 WL 2774482, at *8 (internal quotation marks omitted). For example, the second itemized statement lists 1.25 hours of work on June 7 and 8, 2011 for "[r]eview[ing] defense filings related to Motion for Extension of Time to respond to Motion for Order to Show Cause. Draft and file response to Motion." (Doc. 124-2 at 2). This statement includes the dates on which the service was performed, the time devoted to the task, and a description of the service that was provided. This is exactly what Local Rule 54.2(e)(1) demands, and the other nine contested statements contain a similar amount of detail. Defendants have not explained how those statements are insufficient and provide no authority to support such a

conclusion.

Defendants further argue that the itemized statement is insufficient because there is no discussion of the "novelty and difficulty of the questions presented" or the "skill requisite to perform the legal services." LRCiv. 54.2(c)(3). Defendants claim that because of their failure to file a timely response to the Government's Request for Admissions, those admissions were deemed admitted, and thus the Government "would not have prevailed save and except for this advantage." (Doc. 130 at 7). Defendants argue that this "advantage" eliminates any novelty or difficulty in asserting the Government's position.

Defendants' argument rests on the incorrect assumption that every factor listed in Local Rule 54.2(c)(3) must be discussed in a request for attorneys' fees. Defendants assert that "LRCiv 54.2(c)(3) *requires* a discussion of" novelty and difficulty. (Doc 130 at 7) (emphasis added). The Government argues that this is false, and Defendants cite no authority stating otherwise. The Local Rule states that the memorandum in support of a Motion for Attorneys' fees must include a section titled "Reasonableness of Requested Award." LRCiv. 54.2(c)(3). Under this section, the moving party "should discuss, *as appropriate*, the various factors bearing on the reasonableness of the requested attorneys' fees award." *Id.* (emphasis added). The Rule then goes on to list thirteen different factors, but as the Rule's language makes clear, the moving party need not discuss all thirteen factors. Rather, the moving party needs to discuss only those factors that are appropriate. The Government is correct that "'[t]he Court need not consider all . . . factors, but only those called into question by the case at hand and necessary to support the reasonableness of the fee award.'" (Doc. 133 at 6) (quoting *Kessler v. Assocs. Fin. Servs. Co. of Hawaii, Inc.*, 639 F.2d 498, 500 n.1 (9th Cir. 1981)). Because the Government is a party, a lot of the factors are not applicable, such as "whether the fee contracted between the attorney and the client is fixed or contingent" or "the 'undesirability' of the case." *See* LRCiv. 54.2(c)(3).

The Government's section regarding the reasonableness of the requested award provides extensive support for the reasonableness of its fee calculation, including references to the relevant communities' market rates. *See Schwarz v. Sec'y of Health and Human*

- 9 -

*Services*, 73 F.3d 895, 906 (9th Cir. 1995) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984) ("A district court should calculate [a] reasonable hourly rate 'according to the prevailing market rates in the relevant community.'")).  Specifically, the Government provides statistics that show that counsel for the Government's rate, $134.92 per hour, is well below the average billing rate for similar work in both Arizona and in the District of Columbia. (Doc. 124-3; Doc. 124-4). Having considered the Government's statistics, which were obtained from the State Bar of Arizona, the Court finds that the Government's requested hourly rate is far below even the lowest average hourly rate for Arizona attorneys. (Doc. 124-4) (showing that attorneys practicing workers' compensation defense bill $145 per hour on average, which is the lowest average rate among all practice areas).  Defendants present no argument that the Government's hourly rate is unreasonable, nor do they argue that the number of hours expended by the Government is unreasonable.  Thus, the Court finds that the rate and number of hours stated in the Government's Motion is reasonable.

## IV. CONCLUSION

**IT IS ORDERED** GRANTING Plaintiff United States of America's Motion for Attorneys' Fees (Doc. 124) in the amount of $33,064.87.

DATED this 8th day of March, 2012.

James A. Teilborg
United States District Judge

- 10 -